'UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: CV – 04-1351 ADM/RLE

| | |
|---|---|
| Bruce Beckstrom,<br><br>　　　　Plaintiff,<br>v.<br><br>Direct Merchant's Credit Card Bank; Messerli & Kramer, P.A.;  CSC Credit Services, Inc.; and Trans Union LLC,<br><br>　　　　Defendants. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MESSERLI & KRAMER'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff submits this Memorandum in opposition to Defendant Messerli & Kramer ("M & K")'s Motion for Summary Judgment.[1] Defendant's arguments fail. First, Defendant fails to show that no reasonable jury could find for Plaintiff on his FDCPA claims under 15 U.S.C. §§ 1692d, –e, and -g. A Plaintiff need not be a "consumer," to bring claims under those §§ 1692d and -e, and Plaintiff is a "consumer" anyway. Defendant ignores substantial portions of the evidence favorable to Plaintiff – including a series of letters from Defendant – that show that Defendant violated §§ 1692d, –e, and –g. Such evidence also shows that Defendant has not met its burden to show a bona fide error, because the violations were neither unintentional nor committed in the presence of

---

[1] Plaintiff opposes the Defendant CRAs' motions for summary judgment in a separate memorandum, filed contemporaneously herewith.

-1-

reasonable procedures designed to prevent such violations. Plaintiff has suffered actual damages, but need not have to recover under the FDCPA, a strict liability statute.

Defendant also fails to show that no reasonable jury could find for Plaintiff on his FCRA claim. Defendant had no permissible purpose to pull Plaintiff Bruce Beckstrom's August 5, 2003 credit report, when Defendant knew by then that Bruce and Bryce Beckstrom were separate people and that only the latter was the judgment debtor. Plaintiff suffered actual damages, but need not show actual damages anyway because Defendant's FCRA violations were willful.

Accordingly, Defendant Messerli & Kramer's Motion for Summary Judgment should be denied with respect to Plaintiff's FDCPA claims under §§ 1692d, –e, and -g and with respect to Plaintiff's FCRA claim for M & K's impermissible access of Plaintiff's credit report on August 5, 2003.

## FACTS SPECIFIC TO PLAINTIFF'S CLAIMS AGAINST MESSERLI & KRAMER

The facts of this case are generally set forth in Plaintiff's Memorandum of Law in Opposition to Defendants CSC's and Trans Union's Motions for Summary Judgment, the "Facts" section of which Plaintiff hereby incorporates by reference. Certain additional facts specific to Plaintiff's Claims against Messerli & Kramer are as follows.

After Plaintiff put M & K on notice that the money had been withdrawn from the wrong person's account, M & K's representative Jefferson Pappas exchanged a series of letters with Plaintiff's attorney at the time. (See generally Goolsby Aff. ¶ 11, Ex J – Pappas depo. 69:23-81:10, excerpts from Ex. 1.) Specifically, after receiving a letter from

Plaintiff's attorney expressing concerns about the situation, Pappas responded with a letter that included the following accusations:

> Either your client's son took out the card in his own name and used your client's social security number, or your client took out the card in his son's name and used his own social security number. . . . Either his son committed fraud against my client and your client, in which case your client should look to his son for answers; or your client committed fraud and is not entitled to any relief.

(Pappas depo. Ex. 1, June 20, 2003 letter.) However, M & K's client, DMCCB, never thought that the account had been fraudulently opened. (Benefield depo. 60:22-62:4.) In that June 20, 2003 letter, Pappas also made the following statement: "Regarding his 'credit rating', I do not know what his bank will report if anything. That is between your client and his bank and controlled by his contract with them." (Pappas depo. Ex. 1, June 20, 2003 letter.)

Plaintiff's attorney then wrote three letters to Pappas, dated July 1, July 10, and August 7, 2003, respectively, asking M & K to provide a copy of the DMCCB credit card application and to remove the judgment from Plaintiff's credit reports. (<u>See</u> Papas depo. Ex. 1.) These letters went unanswered until August 13, 2003, when Pappas snidely wrote:

> Please be advised that we have ascertained that Bruce Beckstrom does *not* appear to be the applicant or judgment debtor for any files in our office. It does appear however that someone may have used his social security number to obtain credit. That "someone" has admitted to owing the debt and we intend to collect it from him from now on. . . . If your client is not satisfied, I suggest that he talk to "someone."

(Pappas depo. Ex. 1, fist letter dated Aug. 13, 2003.)

After one more letter from Plaintiff's attorney asking M & K to produce the credit application, Pappas dismissively wrote:

> I've gone out of my way to accommodate you and your client . . . . If your client is experiencing negative ramifications as a result of the above referenced judgment, I suggest he talk to Bryce Beckstrom because I cannot help him anymore. I have done everything you have asked and more.

(Pappas depo. Ex. 1, second letter dated – incorrectly – Aug. 13, 2003.)

Pappas, acting on Messerli & Kramer's behalf, engaged in this course of conduct in the absence of any procedure or policy in place at Messerli & Kramer for dealing with situations in which it was discovered that M & K had engaged in collection activity against the wrong person. (See Pappas depo. 32:16-33:25.)

At least by August 5, 2003, M & K knew that Bruce and Bryce were separate people, and had Bryce's correct social security number associated with the collection file. (See Pappas depo. 84:20-24.) Nevertheless, M & K admits that it pulled *Plaintiff's* credit report on August 5, 2003. (Weber Aff. ¶ 36.) M & K's representative testified that he did not know why it was pulled. (See Goolsby Aff. ¶ 12, Ex. K – Weber depo. 44:13-44:24.)

Plaintiff testified to emotional distress that he suffered at the hands of all Defendants. (See generally Plaintiff's Mem. in Opposition to Defendant CRA's Motions for Summary Judgment.) In addition, there is evidence of Plaintiff's emotional distress specifically caused by M & K: Plaintiff testified that his distress stemmed from his feeling that M & K's letters were "a slam on me," and he took the letters as "an affront to me." (Bruce Beckstrom depo. 227:12-229:4.) Plaintiff's wife testified that Plaintiff had mentioned to her at the time of the sleepless nights she witnessed that his sleeplessness was caused at least in part by Messerli & Kramer, which, in Plaintiff and his wife's view, was "where it all started." (Christine Beckstrom depo. 46:46:4-46:21.)

## **ARGUMENT**

The legal standard for a summary judgment motion is set forth in Plaintiff's Memorandum of Law in Opposition to Defendants CSC's and Trans Union's Motions for Summary Judgment, the "Legal Standard" section of which Plaintiff hereby incorporates by reference.

I. **M & K'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING FDCPA CLAIMS SHOULD BE DENIED BECAUSE THE COURT HAS JURISDICTION AND A REASONABLE JURY COULD FIND VIOLATIONS THAT ENTITLE PLAINTIFF TO RECOVERY.**

   A. **The Court has jurisdiction under 15 U.S.C. § 1692k.**

Defendants' theory on jurisdiction is based on the contention that Plaintiffs are supposedly not "consumers." However, the FDCPA expressly provides that liability is not contingent upon the plaintiffs being consumers: "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person . . . " 15 U.S.C. § 1692k. Similarly, as this Court has recently explained to Messerli & Kramer, §§ 1692d, -e are by their express terms not limited in their application to "consumers." See Rudd v. Messerli & Kramer, et al., Civ. No. 04-1380, slip op. at 10-12 (D. Minn. 2004) ("Messerli's argument is inconsistent, however, with the plain language of the FDCPA.") (Goolsby Aff. ¶ 23, Ex. V.) Accordingly, courts have noted that "plaintiffs may bring an action under the FDCPA although they are not consumers under the statute." Conboy v. AT & T Corp., 84 F. Supp. 2d 492, 504 n.9 (citing Riveria v. MAB Collections, Inc., 682 F.

Supp. 174, 175 (W.D.N.Y. 1988); Whatley v. Universal Collection Bureau, Inc., 525 F. Supp. 1204, 1206 (N.D.Ga. 1981)).

Defendants' argument based on Rhodes v. Westoak Realty & Investment, 938 S.W.2d 565 (Mo. Ct. App. 1998) does not apply to §§ 1692d and –e. Rhodes involved a claim under 15 U.S.C. § 1692g. That section, unlike §§ 1692d and -e, expressly refers to a debt collector's obligations to "the consumer." As the Rhodes court emphasized, § 1692g "by its terms . . . requires only that a debt collector send a *consumer* the written notice." Rhodes, 938 S.W.2d at 567 (quoting West v. Costen, 558 F. Supp. 564, 580 (W.D. Va. 1983)). That Congress expressly used the word "consumer" in § 1692g, and gave that word a definition in § 1692a, demonstrates that Congress knew how to limit a provision to consumers when it intended to. Congress did not in §§ 1692d and -e.

Moreover, in this case, Plaintiffs are consumers anyway. A reasonable jury could hardly help but conclude that Plaintiff was alleged to owe a debt when Pappas said, "[Y]our client took out the card in his son's name and used his own social security number." (Pappas depo. Ex. 1, June 20, 2003 letter.) Furthermore, Wells Fargo, at least, plainly attributed the debt to Plaintiffs when it withdrew money from his account. The Act's definition of "consumer" as a debtor or alleged debtor does not specify who must do the alleging. Accordingly, Defendant's jurisdiction argument must be rejected.

### B. **Messerli & Kramer violated the FDCPA.**

The FDCPA, like the FCRA, is a consumer protection statute that should be liberally applied in favor of the consumer. See Picht v. Hawks, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999).

The FDCPA prohibits debt collector harassment and abuse: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

The Act also bars debt collectors from making false or deceptive statements:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2) The false representation of —
>     (A)    the character, amount, or legal status of any debt;
> . . .

15 U.S.C. § 1692e.

While §§ 1692d and -e provide examples of violative conduct, conduct can be a violation even if it does not fit neatly into any of the examples. Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1516-17 (9th Cir. 1984).

Defendant's summary judgment motion ignores the series of correspondence from Messerli & Kramer, and instead attempts to focus the Court's attention solely on the judgment and the initial erroneous withdrawal from Plaintiff's account. Plaintiff is entitled to have the entirety of the evidence considered.

M & K's accusatory, snide, and dismissive series of letters violated the FDCPA. A reasonable jury could hardly help but conclude that, in violation of § 1692d, the natural consequence of the words "your client committed fraud and is not entitled to any relief," was to harass, oppress, and abuse Plaintiff. (Pappas depo. Ex. 1, June 20, 2003 letter.) M & K's letters were also harassing, oppressive, and abusive to Plaintiff inasmuch as M &

K was very directly accusing Plaintiff's flesh-and-blood, his own son, of criminal fraud. These statements were especially abusive in light of the fact that M & K's client, DMCCB, never thought its account with Bryce Beckstrom had been opened fraudulently. Likewise, in violation of § 1692e, the accusation was a false statement in connection with the collection on the DMCCB account.

A reasonable jury could similarly conclude that M & K's subsequent letters were abusive.  M & K made another false representation when Pappas claimed that he had done everything Plaintiff's attorney had asked, when in fact, M & K never provided Plaintiff with a copy of a credit application.

The FDCPA also provides as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing -
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if    different from the current creditor.

15 U.S.C. § 1692g.

None of the written communications from M & K to Plaintiff contained the notice required under § 1692g. (See generally Pappas depo. Ex. 1.)

Accordingly, M & K is not entitled to summary judgment on the basis that it supposedly did not violate the FDCPA.

### C. **Messerli & Kramer has not met its burden of showing a bona fide error.**

Messerli & Kramer attempts to rely on the following provision of the FDCPA:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). The bona fide error defense is thus an affirmative defense on which the defendant bears the burden of proof. Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1514 (9th Cir. 1994) (reversing summary judgment for the defendant on plaintiffs' FDCPA claims on the ground that the defendant had failed to introduce any evidence of reasonable preventative procedures).

Messerli & Kramer acknowledges that bona fide error defense does not apply when the violation was intentional or knowing. The bona fide error defense does not apply to mistakes of law. Picht v. Hawks, 236 F.3d 446 (8th Cir. 2001).

Merely showing that the violation was unintentional and unknowing is not enough for a defendant. As the plain language of the act makes clear and Messerli & Kramer concedes, absent the *existence of procedures* reasonably adapted to avoid errors a debt collector cannot establish that its actions fell under bona fide error exception to the FDCPA. See Fox, 15 F.3d 1507.

M & K fails on both elements of the bona fide error defense. M & K intentionally wrote to Plaintiff Bruce Beckstrom after it knew that he was not the judgment debtor; intentionally accused him and/or his son of fraud; intentionally represented that it had done everything Plaintiff's attorney had asked, when it knew it had not produced a credit application; and was intentionally snide and dismissive of Plaintiff's concerns. Moreover, Pappas testified that M & K has no procedures for dealing with situations in which it is discovered that M & K has engaged in collection activity against the wrong person. (See Pappas depo. 32:16-33:25.)

Hence, there is no bona fide error defense.

### D. **Plaintiff's FDCPA claims are not defeated on the basis of any supposed deficiency in damages.**

#### 1. **M & K caused Plaintiff to suffer actual damages.**

Plaintiff has testified to the emotional distress M & K's illegal letters caused him. (Bruce Beckstrom depo. 227:12-229:4.) The physical manifestations of Plaintiff's emotional distress, from both M & K and the other defendants, are detailed in Plaintiff's Memorandum of Law in Opposition to Defendants CSC's and Trans Union's Motions for Summary Judgment. It is important to note, however, that among the three defendants currently moving for summary judgment, all the emotional distress that Plaintiff suffered prior to the CRAs' botched reinvestigations is attributable to Messerli & Kramer.

#### 2. **The FDCPA is a strict liability statute that entitles Plaintiff to statutory damages even absent actual damages and without a showing of willfulness.**

The FDCPA is a strict liability statute.  See Picht v. Hawks, 236 F.3d 446, 451 (8th Cir. 2001).  The civil liability provision of the FDCPA allows an individual plaintiff to recover statutory damages up to $1,000 – separate and distinct from any recovery for actual damages – plus reasonable attorney's fees and costs.  See 15 U.S.C. § 1692k.  Unlike the FCRA, no showing of willfulness is required in the absence of any actual damages.

Thus, even if Plaintiff had not suffered any actual damages at the hands of Messerli and Kramer, its violations would entitled Plaintiff to recover statutory damages.  Accordingly, Plaintiff's FDCPA claims do not fail for lack of damages.

**II.    M & K'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FCRA CLAIM SHOULD BE DENIED BECAUSE A REASONABLE JURY COULD CONCLUDE FROM THE EVIDENCE THAT DEFENDANT VIOLATED THE FCRA AND EITHER CAUSED PLAINTIFF DAMAGE OR ACTED "WILLFULLY" OR BOTH.**

**A. M & K violated the FCRA.**

Plaintiff's FCRA claim is based on M & K's impermissible access of Plaintiff's credit report in August 2003.

The FCRA prohibits using or obtaining a consumer report for any purpose other than the limited purposes set forth in 15 U.S.C. § 1681b(a).  See 15 U.S.C. § 1681b(f).  There are only two provisions of § 1681b(a) that M & K claims are applicable:  §§ 1681b(a)(3)(A) and –(F).

Those provisions permit an entity to obtain a consumer report if that entity: "intends to use the information in connection with a credit transaction *involving the consumer on whom the information is to be furnished* and involving the extension of

credit to, or review or collection of an account of, the consumer," § 1681b(a)(3)(A); or "otherwise has a legitimate business need for the information – (i) in connection with a business transaction *that is initiated by the consumer*; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account." § 1681b(a)(3)(F).

This Court, relying on precedent from various jurisdictions including the Eight Circuit, has rejected arguments nearly identical to those made by Defendant here. See Sather v. Weintraut, Civ No. 01-1370, slip op. at 5-6 (D. Minn. 2003) (JNE/JGL) (Goolsby Aff. ¶ 18, Ex. Q) (citing, *inter alia*, Bakker v. McKinnon, 152 F.3d 1007, 1012 (8th Cir. 1998)). Sather explained that § 1692b(a)(3)(A) "requires identity between the person whose account is to be reviewed or collected and the subject of the consumer report." Sather, slip op at 5. Sather similarly held that § 1681b(a)(3)(F)(i) did not apply because no consumer relationship existed between the plaintiffs and the defendants. See Id. at 6.

Likewise in this case, Plaintiff has never had an account with or initiated or been involved in any transaction with DMCCB or M & K. M & K's actions were therefore outside of the express limits of the statute.

M & K claims that it should not be held liable for pulling Plaintiff's credit report in error. However, that argument does not apply to August 2003: by then, M & K knew perfectly well that Bryce and Bruce were separate people and that the judgment debtor was Bryce. Indeed, M & K admits that it intentionally obtained Plaintiff's credit report, and claims now that it was for the purpose of ensuring there were no inaccuracies.

Tellingly, in discussing the August 2003 credit pull, M & K can point to no part of § 1681b(a) that would apply.  (See M & K's Mem. at 33.)  Instead, M & K attempts to rely on Smith v. Bob Smith Chevrolet, Inc., 275 F. Supp. 2d 808 (W.D. Ky. 2003).  However, Smith does not stand for the proposition that anyone who claims to be helping the consumer is not bound by the express limitations of § 1681b(a).  To the contrary, Smith held that "the 'legitimate business need' permissible purpose should be *narrowly* construed in the context of the other five enumerated purposes," and found that the defendant in that case did not have a permissible purpose.  Id. at 818-19.

Moreover, a reasonable jury could conclude from Pappas' hostile letters that M & K did not actually have any intention of helping Plaintiff.  Indeed, that appears to be a theory only concocted for purposes of this litigation, as M & K admits that it has no record of why it pulled Plaintiff's credit report in August 2003.  (See Weber depo. 44:13-44:24.)

**B. Plaintiff's FCRA claims against M & K are not defeated on the basis of any supposed deficiency in damages.**

As explained above, Plaintiff suffered actual damages at the hands of Messerli & Kramer.  Moreover, as explained in Plaintiff's Memorandum of Law in Opposition to Defendants CSC's and Trans Union's Motions for Summary Judgment, a plaintiff is entitled to punitive damages under the FCRA even absent actual damages when the violation is willful.  The standard for willfulness under 15 U.S.C. § 1681n is set forth in Plaintiff's memorandum opposing the CRAs' motions, the relevant portion of which Plaintiff hereby incorporates by reference.

A reasonable jury could conclude from Pappas' letters that M & K's FCRA violation was willful. A jury could conclude that by pulling Plaintiff's credit report in August 2003, M & K was hoping to somehow substantiate its suspicion that the Beckstroms had engaged in fraud. The following statement from Jeff Pappas – "Regarding his 'credit rating', I do not know what his bank will report if anything. That is between your client and his bank and controlled by his contract with them" (Pappas depo. Ex. 1, June 20, 2003 letter) – shows that M & K knew that Plaintiff's credit report was none of their business, i.e., that M &K did not have a legitimate business purpose.

Likewise, a reasonable jury could conclude that if M & K were sincerely concerned about inaccuracies on Plaintiff's credit reports, M & K would have accessed reports from more than just one bureau, and would have actually done something to prevent the DMCCB account and the judgment from appearing on Plaintiff's credit reports. Instead, the inaccuracies did not begin to come off until Plaintiff himself disputed with the CRAs four months later.

## **CONCLUSION**

Because a reasonable jury could conclude from the evidence that Messerli & Kramer intentionally and willfully violated both the FDCPA and the FCRA and caused Plaintiff damages, Defendant's Motion for Summary Judgment with respect to Plaintiff's 15 U.S.C. §§ 1692d, –e, and -g claims and his FCRA claim for the credit pull in August 2003 should be denied.

Dated this 14th day of July, 2005.　　**CONSUMER JUSTICE CENTER, P.A.**

By: <u>　s/John H. Goolsby　　　</u>
Thomas J. Lyons, Jr.
Attorney I.D. #:  0249646
John H. Goolsby
Attorney I.D. #:  0320201
342 East County Road D
Little Canada, Minnesota  55117
Telephone:  (651) 770-9707
Attorneys for Plaintiff