**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Bruce Beckstrom,

Plaintiff,

v.

Direct Merchant's Credit Card Bank, Messerli & Kramer, P.A., CSC Credit Services, Inc., and Trans Union LLC,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 04-1351 ADM/RLE

---

John H. Goolsby, Esq., Consumer Justice Center, Little Canada, MN, argued for and on behalf of Plaintiff.

Robert J. Schuckit, Esq. and G. John Cento, Esq., Schuckit & Associates, PC, Indianapolis, IN, argued for and on behalf of Defendant Trans Union, LLC; Martin S. Chester, Esq., Faegre & Benson LLP, Minneapolis, MN, argued for and on behalf of Defendant CSC Credit Services, Inc.; Jefferson C. Pappas, Esq. and Derrick N. Weber, Esq., Messerli & Kramer, P.A., Plymouth, MN, argued for and on behalf of Defendant Messerli & Kramer, P.A.; and Jonathan Wilson, Esq., Dorsey & Whitney LLP, Minneapolis, MN, appeared on behalf of Defendant Direct Merchant's Credit Card Bank.

---

## I. INTRODUCTION

On August 3, 2005, oral argument before the undersigned United States District Judge was heard on Defendant Trans Union, LLC ("Trans Union"), CSC Credit Services, Inc. ("CSC"), and Messerli & Kramer, P.A.'s ("M&K") (collectively, "Defendants") Motions for Summary Judgment [Docket Nos. 57, 63, 72]. In his Complaint [Docket No. 1], Plaintiff Bruce Beckstrom ("Plaintiff") alleges various violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"). For the reasons set forth herein, Defendants' Motions for Summary Judgment are granted.

## II. BACKGROUND

### A. Facts Specific To Defendant Masserli & Kramer, P.A.

This case arises over one letter – the transposition of a "u" to a "y." On December 27, 2001, Plaintiff's son, Bryce Beckstrom, opened an account with Direct Merchant's Credit Card Bank ("DMCCB"). Although Plaintiff's son opened the account ending in 6269 (the "6269 account"), the account bore the address and social security number of his father, the Plaintiff. After determining the credit card had maxed out and was in default, DMCCB sought to collect on the 6269 account from Bryce Beckstrom. M&K was hired by DMCCB to collect the debt. Weber Aff. [Docket No. 75] ¶¶ 1-3. DMCCB provided M&K with the relevant account information, including Plaintiff's social security number. Id. In December 2002, M&K began its attempts to collect on the account by obtaining a judgment against Bryce Beckstrom. Id.

After securing a judgment against Bryce Beckstrom, M&K levied an account on May 29, 2003 at Wells Fargo based on the social security number given to it by DMCCB. Id. at Ex. F. The bank levy identified Bryce Beckstrom as the judgment debtor; however, unbeknownst to M&K, it listed Plaintiff's social security number. After levying the account, which was owned by Plaintiff, M&K was contacted by Plaintiff and his wife on June 6, 2003. Id. ¶¶ 22-28. M&K first contacted Wells Fargo, and then spoke with Plaintiff's attorney, who provided M&K with Plaintiff's social security number, which matched that attached to the 6269 account. Id. After determining that the account levied belonged to Plaintiff, not Bryce Beckstrom, M&K released the account later the same day, June 6, 2006. Id. at Ex. G.

Following the discovery of this information, M&K began an investigation to determine the true identity of the debtor linked to the 6269 account. M&K eventually determined that

Bryce Beckstrom was indeed the account holder. M&K continued its investigation, however, to determine to what extent the account may have been on Plaintiff's credit report. In the course of that investigation, M&K pulled a credit report on Plaintiff in August 2003.

**B. Facts Specific To Trans Union LLC**

On December 15, 2003, Trans Union received a letter from Plaintiff, which stated in part: "I am writing you to dispute a judgment that was place[d] on my credit report, which was brought against my son Bryce Allan Beckstrom. . . .I am requesting this judgment, all its information be removed from my credit report." Reger Aff. [Docket No. 67] ¶ 29, Ex. A. The letter referenced the 6269 account; however, upon inspection of Plaintiff's credit file, Trans Union discovered no judgment was maintained in his file, although the 6269 account was listed. Id. ¶ 30-32. To ensure that Plaintiff's consumer credit file did not merge with another consumer file, Trans Union placed a "do not merge" flag on Plaintiff's file. Additionally, although Plaintiff's letter to Trans Union did not request an investigation of the 6269 account, Trans Union proceeded with such an investigation. Id. ¶ 36. Trans Union submitted an account dispute form to DMCCB on the 6269 account to verify the account holder. Id. ¶¶ 37-38. Although DMCCB identified the account holder as Bryce Beckstrom, not Bruce Beckstrom, it did confirm that the social security number of the account was Plaintiff's, as was the address on the account. Id. ¶¶ 57-58. DMCCB did not transmit Plaintiff's birth date. Additionally, DMCCB indicated the account should be "Verified As Reported," indicating that Trans Union's information was accurate. Id. at Ex. B. Trans Union mailed a copy of the results of its investigation to Plaintiff on January 1, 2004. Id. ¶ 59. Trans Union has never provided a consumer report on the Plaintiff to any subscriber or third party which included the DMCCB

account information. Id. ¶ 63.

### C. Facts Specific to CSC

On December 17, 2003, CSC received a letter from Plaintiff virtually identical to the letter, quoted above, sent by Plaintiff to Trans Union. Fogleman Decl. [Docket No. 60] ¶ 18. CSC immediately began an investigation, sending an account dispute form to DMCCB. Id. ¶ 19. In response, DMCCB confirmed the account belonged to Bruce Beckstrom, and also verified the social security number and address. Id. ¶ 20, Ex. A. DMCCB did not, however, confirm Plaintiff's birth date. Id. Based on this information, CSC continued to report the 6269 account on Plaintiff's file. Id. ¶ 21. On January 6, 2004, CSC sent a letter to Plaintiff explaining the results of its investigation. Id. ¶ 22. CSC has never prepared a credit report for a subscriber or third party containing the DMCCB account. After the initiation of the instant suit, Plaintiff's file was requested three times. However, CSC never prepared a report based on these requests. Fogleman Second Decl. [Docket No. 92] ¶¶ 6-8.

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. M&K**

**1. Alleged FDCPA Violation**

Plaintiff alleges violations of FDCPA, the FCRA, and a common law intrusion upon seclusion claim. Although the Complaint bases its FDCPA claims on the levying of Plaintiff's Wells Fargo account, Plaintiff, in his reply brief, now attempts to include in his FDCPA claims a series of letters exchanged between M&K and Plaintiff's attorney. Even with the enlarged claim, Plaintiff has failed to present evidence sufficient to demonstrate a FDCPA violation.

Specifically, Plaintiff alleges violations of 15 U.S.C. §§ 1692d-f. These sections prohibit the harassment of debtors, the use of false or misleading representations, and the use of unfair or unconscionable means to collect a debt. Plaintiff's evidence in support of these claims is scant. Plaintiff, in his Complaint, alleges the levying of his Wells Fargo account is a violation of these sections, as were the series of communications between M&K and Plaintiff's counsel. However, these claims fail for several reasons. First, the clear evidence demonstrates that M&K relied on the information provided by DMCCB in levying Plaintiff's account, including Plaintiff's social security number. M&K reasonably relied on the representations of DMCCB in levying Plaintiff's account. S.O.G.-San Ore-gardner v. Missouri Pac. R. Co., 658 F.2d 562, 567 (8th Cir. 1981) (agent may rely on the representations of the principal). No evidence has been proffered to demonstrate that M&K should have somehow known, prior to levying Plaintiff's account, that

they had the incorrect social security number.

Second, M&K's actions do not rise to the level of harassment, unfairness, or unconscionability required by 15 U.S.C. § 1692. After Plaintiff and his attorney contacted M&K, the firm immediately investigated the account, and, upon determining the account did not belong to Bryce Beckstrom, immediately released the account levy without delay. In regard to the letters, the letters in question were not directed at Plaintiff, but rather, his attorney. Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior"). The letters were written in response to requests by Plaintiff's attorney, and moreover, there is no attempt in any of the letters to collect any debt from Plaintiff. As a result, the letters can hardly be construed as an attempt to collect a debt, and are therefore outside the purview of § 1692. In any event, the letters fall short of the harassment, use of false or misleading representations, or use of unfair or unconscionable tactics required under the statute. The letters state, in part: "Either his son committed fraud against my client and your client, in which case your client should look to his son for answers; or your client committed fraud and is not entitled to any relief." Pappas Dep. [Docket No. 85 Ex. J] Ex. 1. In the same letter, M&K wrote "Regarding his 'credit rating', I do not know what his bank will report if anything. That is between your client and his bank and controlled by his contract with them." Id. Finally, another letter stated: "That 'someone' has admitted to owing the debt and we intend to collect if from him from now on. . . . If your client is not satisfied, I suggest that he talk to 'someone.'" Id. None of these letters, given fair consideration, can be considered harassing. For the most part, they speak to

M&K's reasonable conclusion that Plaintiff's son is the most likely source for the confusion engendered by having his father's social security number on the DMCCB account.

Because Plaintiff's have offered no evidence that M&K violated the FDCPA, judgment will be entered for M&K.

**2. Alleged FCRA Violation**

Plaintiffs claim a violation of the FCRA, 15 U.S.C. § 1681b(f), by M&K impermissibly pulling Plaintiff's credit report. M&K pulled Plaintiff's credit report on three occasions, twice before learning it had the incorrect social security number and once afterwards to determine whether Plaintiff's credit had been affected by the levying of his Wells Fargo account. As M&K correctly argues, however, M&K had a permissible purpose to pull Plaintiff's credit report under § 1681b(a)(3)(A), which allows one to pull a credit report if the person "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Here, the access to the Plaintiff's credit report, prior to M&K's discovery of the social security number error, was made in an attempt to collect on an account of the consumer. That is, M&K had reason to believe that Plaintiff had defaulted on the 6269 account, and therefore pulled his credit report in connection with that effort. Although it was later discovered that Plaintiff did not own the 6269 account, the FCRA is not violated if the entity seeking the credit report made a good faith error in pulling the report. Korotki v. Attorney Servs. Corp., Inc., 931 F. Supp. 1269, 1276 (D. Md. 1996) ("[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA"). As to the August 2003 credit report pull, M&K sought to ensure that the

previous levy of Plaintiff's Wells Fargo account had not adversely affected his credit. Again, this type of credit report pull is permissible under the FCRA. Smith v. Bob Smith Chevrolet, Inc., 275 F. Supp. 2d 808, 817 (W.D. Ky. 2003). Because M&K's pulls of Plaintiff's credit reports do not violate the FCRA, judgment will be entered for M&K.

**3. Intrusion Upon Seclusion**

In Minnesota, intrusion upon seclusion requires a demonstration of three elements: (1) an intrusion; (2) that is highly offensive to a reasonable person; (3) into some matter into which a person has a legitimate expectation of privacy. Phillips v. Grendahl, 312 F.3d 357, 371 (8th Cir. 2002). Intrusion upon seclusion is an intentional tort. Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231 (Minn. 1998). Here, there is no evidence that M&K intentionally intruded upon Plaintiff's seclusion, nor were any of M&K's actions highly offensive. In fact, M&K's actions were reasonable, given the information available to them. There was no reason for M&K to expect that they were levying anyone's account other than Bryce Beckstrom's, for which they had a legitimate purpose. As a result, intent can not be shown, nor can a highly offensive invasion. The letters, not alleged in the Complaint as part of the violation, were not sent to Plaintiff, but rather, Plaintiff's attorney, and therefore did not intrude upon Plaintiff. Consequently, M&K's Motion is granted.

**C. Trans Union**

Plaintiff has alleged Trans Union violated 15 U.S.C. §§ 1681e and 1681i(a). Plaintiff further has alleged a claim of credit defamation against Trans Union. However, in its response brief, Plaintiff failed to respond to Trans Union's Motion for Summary Judgment on the 15 U.S.C. § 1681e and credit defamation claims. As a result, judgment will be entered for Trans

Union on those claims.[1]

To prevail on an alleged § 1681i(a) violation, Plaintiff must demonstrate Trans Union failed to reinvestigate disputed information and then verify, update, or delete the information within 30 days. 15 U.S.C. § 1681i(a)(1)(A). There is no evidence that Trans Union violated this mandate. Upon receipt of Plaintiff's letter of December 2003, Trans Union promptly investigated the DMCCB account, even though the letter, contrary to Plaintiff's assertions, does not request such an investigation. During its investigation, the only piece of information that did not match Trans Union's data was the first name of Bryce rather than Bruce. However, all other identifying information supplied by DMCCB, including the address of Plaintiff and his social security number, was verified. Moreover, DMCCB indicated Trans Union should not adjust its file. Based on these undisputed facts, no reasonable jury could conclude that Trans Union behaved negligently in regard to its investigation, Plaintiff's arguments regarding the slightly different first names of father and son notwithstanding. Trans Union's actions were eminently reasonable, particularly in light of the fact that it was under no duty to investigate Plaintiff's file.

Plaintiff also alleges Trans Union acted willfully in its investigation of Plaintiff's file; however, Plaintiff has not offered evidence of any negligence, much less willful behavior, on the part of Trans Union.

Even if Plaintiff's proffered facts demonstrated a § 1681i(a) violation, he has offered

---

[1] At oral argument, the attorneys for Trans Union and CSC noted that two days prior to the hearing, they received a proposed stipulation from Plaintiff to dismiss the 15 U.S.C. § 1681e and credit defamation claims. This Court has admonished Plaintiff's attorney in the past for pursuing claims through dispositive motion briefing, only to withdraw them at the eleventh hour. Such practice is wasteful of both client and court resources. Once again, Plaintiff's attorneys are reminded that in the future, claims that prove to be without sufficient factual support should be withdrawn as soon as it is discovered that the claims are without merit.

insufficient proof of damages. Plaintiff concedes that he has not been damaged from a credit perspective. He has not been denied credit, nor did anyone seek a credit report from Trans Union while the DMCCB account was being reported. Instead, Plaintiff relies completely on allegations of emotional distress, claiming he has suffered sleepless nights, irritability, lack of concentration, and depression. Beckstrom Dep. [Docket No. 85 Ex. B] at 71-75. Beyond Plaintiff's bare allegations, however, little is proffered by way of evidence to support Plaintiff's claims, except for the deposition testimony of his wife attesting to his sleepless nights. Christine Beckstrom Dep. [Docket No. 85 Ex. H] at 19-29. Plaintiff has offered no medical evidence to support his claims.

Plaintiff's evidence of damages is insufficient to survive summary judgment. There is a major issue of causation. Dealing with credit issues may be stressful, however, proving that the sleepless nights were caused by Trans Union, as opposed to worrying about a son's debts and the realization he may have used his father's social security number to gain credit are very serious trial obstacles. There is no evidence to support causation. Further, Plaintiff's allegations of damages are not sufficient as a matter of law to survive judgment. No authority exists for the proposition that some sleepless nights are alone a sufficient physical manifestation to constitute emotional distress. Plaintiff relies heavily on Gohman v. Equifax Information Servs., LLC, but that case involved not only sleeplessness, but aggravation of previous medical injuries as well. No. 03-6442 DSD/JSM (July 21, 2005).

Because Trans Union did not act negligently and Plaintiff can not demonstrate any damages, judgment will be entered for Trans Union.

**D. CSC**

CSC faces the same claims alleged against Trans Union. As a result, the analysis for CSC does not differ significantly from Trans Union, except to note that CSC's case for reasonableness under the 15 U.S.C. § 1681i(a) differs slightly, because DMCCB's response to CSC's query not only listed Plaintiff's address and social security number, but his name as well. Therefore, CSC's claim of reasonableness is even stronger than Trans Union's. With respect to damages, CSC never received a credit request on the Plaintiff until after the commencement of this lawsuit, by which time CSC had frozen Plaintiff's file. Therefore, it never prepared a credit report for Plaintiff, despite Plaintiff's novel theory that by telling the requesters that it could not supply a credit report to them, it somehow issued a credit report. Plaintiff has not supported this theory by citation to any precedent. As a result, CSC's Motion will be granted for the same reasons enumerated above for Trans Union.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Trans Union, LLC's Motion for Summary Judgment [Docket No. 63] is **GRANTED**; and

2. Defendant CSC Credit Services, Inc.'s Motion for Summary Judgment [Docket No. 57] is **GRANTED**; and

3. Defendant Messerli & Kramer, P.A.'s Motion for Summary Judgment [Docket No. 72] is **GRANTED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 5, 2005.